**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX VAN VALEN, : | |
| : | Civil Action No. 04-3667 (JLL) |
| Petitioner, : | |
| : | |
| v. : | |
| : | **OPINION** |
| TERRANCE MOORE, et al., : | |
| : | |
| Respondents. : | |

**APPEARANCES:**

FELIX VAN VALEN, Petitioner Pro Se
# 290794
East Jersey State Prison
Lock Bag R
Rahway, New Jersey 07065

PAULA T. DOW, ESQ.
Essex County Prosecutor's Office
Essex County Courts Building
Newark, New Jersey 07102
Attorneys for Respondents

**LINARES, District Judge**

This matter is before the Court on petitioner Felix Van Valen's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   BACKGROUND

A.   Procedural History

Petitioner, Felix Van Valen ("Van Valen"), is presently confined at the East Jersey State Prison in Rahway, New Jersey. Van Valen was convicted by a jury in the Superior Court of New Jersey, Law Division, Essex County on or about March 6, 1997, for first degree robbery, 2nd degree aggravated assault, 3rd degree terroristic threats, and related weapons charges.  On April 15, 1997, Van Valen was sentenced to life imprisonment without parole on the first degree robbery conviction.  The other charges were merged for sentencing purposes.

Van Valen appealed his final judgment of conviction to the New Jersey Appellate Division.  On October 28, 1998, the Appellate Division affirmed the conviction and sentence after ordering that the conviction for terroristic threats be merged with the robbery conviction as opposed to having it run concurrently.  State v. Van Valen, 316 N.J. Super. 20 (App. Div. 1998).  The New Jersey Supreme Court denied certification on February 29, 2000.  State v. van Valen, 163 N.J. 78 (2000).

On March 14, 2000, Van Valen filed a petition for post-conviction relief ("PCR") with the state court, raising claims of ineffective assistance of trial and appellate counsel. Petitioner's counsel later raised a claim challenging the probable cause finding for the issuance of the arrest warrant.

2

The trial court heard arguments on December 14, 2001, and denied the request for an evidentiary hearing.  The court also denied post-conviction relief.  Van Valen appealed the denial of his PCR petition.  On November 3, 2003, the Appellate Division affirmed the trial court's denial of post-conviction relief substantially for the reasons set forth in the trial court's oral opinion rendered on December 14, 2001.  The New Jersey Supreme Court denied certification on January 29, 2004.

Van Valen filed this federal habeas petition on or about August 2, 2004.  The State responded on November 11, 2004, providing this Court with the relevant state court record.

B.  Factual Background

The facts of this case are recounted from the trial transcripts as follows:

On September 15, 1996, Yasin Bashir, a part-owner of a pizzeria in Newark, New Jersey, was working at his restaurant.  A part-time employee, Alonzo Jenkins, was also working in the restaurant at that time.  Bashir testified that Van Valen came into the pizzeria and put a knife to Bashir's chest, pushed him, and said, "I am going to kill you."  (T2 51:19-52:24).[1]  Jenkins,

---

[1]  The trial transcripts are designated as follows:
    T1 - March 3, 1997 trial transcript
    T2 - March 4, 1997 trial transcript
    T3 - March 5, 1997 trial transcript
    T4 - March 6, 1997 trial transcript
    T5 - April 15, 1997 Sentencing transcript
    T6 - December 14, 2002 PCR transcript

3

the employee, then opened the cash register and took the money. He also took $50.00 from Bashir's pocket.  Bashir's hand was cut and he was punched by Van Valen during the robbery.  (T2 53:22-54:25).

While the robbery was in progress, Shahidah Sanders, another employee of the pizzeria, returned to the store from deliveries and found the door locked.  She looked inside and saw Bashir being robbed by Van Valen and Jenkins.  When the assailants ran out of the pizzeria, Ms. Sanders attempted to chase them in her car.  She then flagged down a police car and the police continued pursuit on foot.  (T3 25:19-28:22).  The police saw Van Valen running and looking backwards during the pursuit.  Van Valen and Jenkins entered a building with the police in pursuit.  After the men exited the building, the police apprehended Van Valen.  The police returned petitioner to the scene of the crime for a show-up identification by the victim, Bashir.  Bashir identified Van Valen as the robber.  Bashir also gave the police Jenkins' name as the other suspect in the robbery.  (T2 57:4-19; 85:24-86:22; 88:1-89:19; 90:3-10).

II.  <u>CLAIMS FOR HABEAS RELIEF</u>

Van Valen raises the following claims in his federal habeas petition: (1) ineffective assistance of trial counsel in failing to request a <u>Wade</u>[2] hearing on the issue of the out-of-court

---

[2]  <u>United States v. Wade</u>, 388 U.S. 218 (1967).

4

identification; (2) the out-of-court identifications were impermissibly suggestive and conducive to misidentification and testimony from the police, witness, and victim should have been excluded accordingly; (3) the trial court erred in giving an erroneous summary to the jury, allowing read-back of testimony not requested, and declining to send Exhibit D-2 photograph in the jury room during deliberations as the jury requested; (4) trial counsel was ineffective in failing to challenge the arrest as unconstitutional and without probable cause.

The State argues that petitioner's claims are without merit or fail to state a cognizable federal constitutional violation. The State does not raise any affirmative defenses.

### III. STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999). Because Van Valen is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas

5

matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

>     (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>         (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>         (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. Id. at 411. See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891. If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of

the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

8

VI.  ANALYSIS

A.  Identification Issue

Van Valen contends that the out-of-court identifications made by the witness, Shahidah Sanders, and the victim, Yasin Bashir, should have been excluded from testimony at trial.  He claims that he did not fit any description given by the witness, that the police had the opportunity to conduct a "line-up" identification, and that the identification at the scene of the robbery was impermissibly suggestive and conducive to misidentification.  He further claims that the trial court should have conducted a Wade hearing to determine the admissibility of the on-scene identification.

The respondents argue that the on-scene identification was reliable and not suggestive.  This claim was raised by petitioner in his state PCR proceedings.  The PCR court determined that there was no need for a Wade hearing and that the out-of-court identification procedure was not overly suggestive.  In particular, the court held:

> In requesting a Wade hearing, and this is very important, pursuant to State v. Ortiz, 203 N.J. Super. 518.
>
> > In requesting a Wade hearing, defendant must show suggestiveness of police procedures directed at identification under a totality of the circumstances.
>
> In this case, the defendant was returned to the scene of the crime by police, where he was identified by Mr. Bashir as the attacker.  The out-of-court identification of petitioner took -- done at the scene, and it was done at the scene, was not overly suggestive because it took place during an on-

9

the-spot police investigation of the activity.  And I cite
State v. Satterfield, 103 N.J. Super. 291, at Page 294, a
1968 Appellate Division case.

The out-of-court identification will not affect the in-court
identification because Mr. Bashir made an accurate in-court
identification, and had opportunity to observe the defendant
during the commissions of the crime.

And I think it's important to note this.  Even if the trial
counsel requested a Wade hearing, those hearings are not
granted on request, but are left to the Court's discretion.

(T6 15:15-16:14).  The Appellate Division affirmed the PCR
court's ruling without discussion.  (Ra 4, Opinion of the
Appellate Division, filed November 3, 2003).

An accused is entitled to due process protection against the
introduction of evidence of, or tainted by, unreliable
identifications elicited through unnecessarily suggestive
identification procedures.  United States v. Ash, 413 U.S. 300,
320 (1973); Manson v. Brathwaite, 432 U.S. 98, 110-17 (1977);
Simmons v. United States, 390 U.S. 377 (1968) (due process
prohibits in-court identification if pre-trial identification
procedure is "so impermissibly suggestive as to give rise to a
very substantial likelihood of irreparable misidentification").

An "on-scene" or "show-up" identification is typically one
in which the suspect is apprehended at or near the scene and is
returned to it immediately where the victim/witnesses may make an
identification.  In Neil v. Biggers, 409 U.S. 188 (1972), the
Supreme Court held that to violate due process an identification
must be unnecessarily suggestive and create a substantial risk of

10

misidentification.  409 U.S. at 196.  Although show-ups are
generally considered more suggestive than line-ups, see Stovall
v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds,
Griffith v. Kentucky, 479 U.S. 314 (1987), a number of Circuit
courts, including the Third Circuit, have held that show-ups are
justifiable under certain circumstances:

> "Immediate show-ups can serve ... important interests.  For
> example, show-ups allow identification before the suspect
> has altered his appearance and while the witness' memory is
> fresh." ...  In our view, such considerations will justify a
> show-up in a limited number of circumstances, such as where
> the police apprehend a person immediately after the crime
> and in close proximity to the scene.

United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996)(citing
U.S. v. Sleet, 54 F.3d 303 (7th Cir. 1995).  See also U.S. v.
Watson, 76 F.3d 4, 6 (1st Cir.), cert. denied, 517 U.S. 1239
(1996); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987);
United States v. Gaines, 450 F.2d 186, 197 (3d Cir. 1971)(where
the Third Circuit held that a show-up conducted without counsel
was justified by "the fact that the eye-witnesses might have
quickly departed, and the considerations of reliability inhering
in an immediate identification"), cert. denied, 405 U.S. 927
(1972).

A "suggestive and unnecessary identification procedure does
not violate due process so long as the identification possesses
sufficient aspects of reliability," for reliability is the
"linchpin in determining the admissibility of identification

11

testimony." <u>Manson v. Brathwaite</u>, 432 U.S. at 106.  In order to judge whether there was a substantial likelihood of misidentification, the court must look at the reliability of the identification in light of the "totality of the circumstances." <u>Government of Virgin Islands v. Riley</u>, 973 F.2d 224, 228 (3d Cir. 1992).  The court should consider factors such as the witness' original opportunity to observe the suspect, the degree of attention during the initial observation, the accuracy of the initial description, the witness' degree of certainty when viewing the suspect at the confrontation, and the elapsed time between the crime and the apprehension/identification.  <u>Neil v. Biggers</u>, 409 U.S. at 199-200.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.  <u>Manson v. Brathwaite</u>, 432 U.S. at 114.

Where a trial court has failed to exclude identification evidence obtained in violation of a defendant's due process or Sixth Amendment rights, the habeas court must determine whether the failure to exclude that evidence was harmless constitutional error under <u>Chapman v. California</u>, 386 U.S. 18 (1967).  <u>See</u> <u>Moore v. Illinois</u>, 434 U.S. 220, 232 (1977).

The Court of Appeals for the Third Circuit has explained that the

> <u>Simmons/Stovall</u> inquiry is essentially two-pronged.
> The first question is whether the initial
> identification procedure was "unnecessarily" or
> "impermissibly" suggestive.  This inquiry actually

contains two component parts: "that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures."  If a procedure is found to have been unnecessarily suggestive, the next question is whether the procedure was so "conducive to ... mistaken identification" or gave rise to such a "substantial likelihood of ... misidentification" that admitting the identification would be a denial of due process.

United States v. Stevens, 935 F.2d 1380, 1389 (3d Cir. 1991) (citations omitted) (emphasis added by Third Circuit).

Applying the Biggers factors, this Court concludes that the show-up identification in this case was reliable.  First, Van Valen was immediately identified by both an eyewitness, Shahidah Sanders, and the victim, Yasin Bashir, at the scene very shortly after the robbery occurred.  The victim had ample time and opportunity to view the petitioner as Van Valen was close in proximity to his victim.  Second, the eyewitness, Sanders, chased the petitioner and his cohort as they fled the pizzeria, and the police gave immediate chase when they were pointed out to the police by Sanders.  Based on their opportunity to view the petitioner as he fled, the police were able to promptly apprehend Van Valen.  Third, Van Valen was apprehended by the police shortly after the robbery and near the vicinity of the robbery.

In light of all these factors, this Court finds that the show-up identification used by the police in this case was not so inherently unfair or impermissibly suggestive as to create a substantial likelihood of irreparable misidentification.  There

13

were sufficient aspects of reliability, based on the totality of the circumstances, to ensure that the petitioner was correctly identified.

Moreover, there was overwhelming evidence against Van Valen to buttress the reliability of the identification.  Testimony included that of the victim, and the arresting officers who had given chase to the suspects and who had an opportunity to view the suspects.  Proceeds from the robbery were found on petitioner when the police apprehended him.  More significantly, petitioner placed himself at the scene during his trial testimony, and admitted that he was a semi-roommate with Alonzo Jenkins, the employee who had participated/directed the robbery.  (T3 93:13-94:8; 101:7-102:5; 91:20-22).  Thus, this Court finds from review of the trial record that there was overwhelming evidence against petitioner and that the issue of identification was one of credibility[3] and not one of impermissible suggestiveness by the police.  Accordingly, this claim for habeas relief will be denied for lack of merit.

_____

[3]  The Supreme Court has noted that the risk of conviction based on an out-of-court misidentification "may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."  <u>Simmons</u>, 390 U.S. at 383.  The Court notes that both the victim and the witness gave strong and positive testimony at trial during an aggressive cross-examination by defense counsel, which supported the credibility of their out-of-court identification of petitioner.

14

B.   <u>Ineffective Assistance of Trial Counsel</u>

Van Valen also asserts that his trial counsel was ineffective for failing to request a <u>Wade</u> hearing on the issue of the show-up identification, which he claims was impermissibly suggestive.  Further, trial counsel failed to challenge petitioner's arrest as unconstitutional and without probable cause.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under <u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a

15

> defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense. Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state

16

an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

    1.  *Failure to Request a Wade Hearing.*

Van Valen first contends that his counsel was deficient in failing to request a Wade hearing to exclude the out-of-court identification testimony by the witness Sanders and the victim Bashir.  Van Valen raised this claim in his state PCR petition.  The PCR court held that the on-scene identification was not overly suggestive based on the totality of the circumstances.  Moreover, the court noted that even if trial counsel had requested a Wade hearing, it was in the court's discretion whether or not to grant one.  Further, the court observed that trial counsel made a strategic decision to move for an acquittal at the conclusion of the State's case based on the problems relating to the out-of-court identification.  The court held that such decisions are accorded deference unless the petitioner can show a lack of actual advocacy.  (T6 16:12-17:5).  Finally, the PCR court found that petitioner could not demonstrate that, but for counsel's errors, assuming he was deficient, the outcome of the trial would have been different.  The court found "very powerful evidence in this case which supported the conviction." (T6 17:18-18:1).

This Court likewise finds that petitioner fails to prove either prong of the two-part _Strickland_ test on this claim of ineffectiveness of trial counsel. For the reasons stated in this Opinion, _supra_, at ¶ IV.A., the out-of-court identifications were not impermissibly suggestive or conducive to misidentification. Thus, counsel' performance was not deficient in failing to seek a _Wade_ hearing, especially where counsel elected to discredit the witness and victim's identification of petitioner on cross-examination. Counsel also made a motion for a directed verdict on the issue of identification, which was denied. These actions by trial counsel may be considered reasonable strategy, based on an informed decision by counsel, which should be accorded a strong level of deference. _Strickland_, 466 U.S. at 689, 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Further, as to prejudice, there was no guarantee that had trial counsel requested a _Wade_ hearing that it would have been granted, or that if a hearing was held, that the court would have excluded testimony at trial concerning the out-of-court identifications. Indeed, based on the PCR court's findings, it is unlikely that the identifications would have been excluded by the trial court. Thus, petitioner has not demonstrated by a reasonable probability that the outcome of the proceedings would

have been different, but for counsel's failure to request a <u>Wade</u> hearing.

Finally, this Court finds nothing to indicate that the state court decisions on this issue were based on an unreasonable application of the facts in light of the evidence presented at trial and the PCR proceedings.  Nor were the courts' decisions contrary to established federal law set forth in <u>Strickland</u>.  Van Valen has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891. Accordingly, this ground of ineffective assistance of trial counsel will be denied for lack of substantive merit.

2.  *Failure to Challenge the Arrest Warrant*

Next, Van Valen argues that his trial counsel was ineffective based on his failure to challenge the arrest warrant for lack of probable cause.  The state PCR court rejected this claim, stating:

> Failure of trial counsel to question the accuracy of the complaint or probable cause for the issuance for a warrant are issues that arise from the record, should have been raised on direct appeal; and, more than that, these issues are clearly cured by proceedings which took place later on, namely the Grand Jury proceeding.
>
> In addition, the impact of petitioner's claims of error was not prejudicial, either individually or in the aggregate to the trial's outcome.  Therefore, even if, arguendo, petitioner's trial counsel's performance was deficient, he has failed to demonstrate a reasonable likelihood of succeeding on the second prong of the <u>Strickland</u> test; that being that there exists a reasonable probability that, but

19

for counsel's unprofessional errors, the results of the
proceeding would have been different.  Clearly, there was
very powerful evidence in this case which supported the
conviction.

(T6 17:8-18:1).

In this case, respondents argue, and this Court agrees, that

the police officers had probable cause to arrest petitioner for

armed robbery based on the witness and victim identifications of

petitioner at the scene of the crime shortly after it had

occurred.  In fact, the police officers had observed the

petitioner and his cohort fleeing from the scene after the

suspects had been pointed out to them by witness Shahidah

Sanders.  Upon apprehension after the chase, the police brought

the petitioner back to the pizzeria where Sanders and Bashir, the

victim, made a positive identification of petitioner as one of

the robbers.  Consequently, there can be no doubt that the police

had probable cause to arrest petitioner.  Trial counsel would

have lost credibility if he had filed a motion challenging the

arrest for lack of probable cause.

Indeed, counsel's failure to file motions or object at trial

does not <u>per</u> <u>se</u> constitute ineffective assistance of counsel.

<u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 383-84 (1986); <u>Jelinek</u>

<u>v. Costello</u>, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a

determination of ineffectiveness depends on whether the motion or

objection would have been granted had it been made.  <u>United</u>

<u>States v. Oakley</u>, 827 F.2d 1023, 1025 (5th Cir. 1987).  <u>See</u> <u>also</u>

20

<u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel). Here, it was extremely unlikely that the trial court would have granted a motion challenging the arrest for lack of probable cause.  Counsel cannot be expected to raise issues that are plainly frivolous and without merit.  Thus, this Court finds that petitioner's trial counsel was not deficient in failing to make this frivolous motion at or before trial.

Moreover, petitioner makes no argument to show prejudice as a result of trial counsel's failure to challenge the arrest warrant on lack of probable cause.  Van Valen fails to demonstrate that but for counsel's failure to challenge the arrest warrant, the outcome of the trial would have been different.  Thus, Van Valen has failed to establish either prong of the <u>Strickland</u> test on this claim of ineffective assistance of trial counsel.

Finally, this Court finds that Van Valen has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly, this claim will be denied for lack of substantive merit.

21

C.  <u>Trial Court Errors in Submission of Evidence to Jury</u>

     Van Valen next asserts that the trial court erred in

declining to send Exhibit D-2 photograph[4] into the jury room

during deliberations upon the jury's request.  He alleges that

the issue of identification was critical in this case and that

this evidence bore directly on that issue.

     Petitioner also claims that it was error for the trial court

to give a summary of evidence to the jury and allow a read-back

of testimony not requested by the jury in response to certain

jury questions submitted to the court.

     The respondents counter that petitioner's claims are

baseless, as the court did allow the photograph exhibit for the

jury deliberations, and that the court had the pertinent

testimony, as requested by the jury, read back to them.  Further,

there was no improper summary of evidence by the trial judge, as

suggested by petitioner.

     This Court finds that the trial transcript plainly belies

petitioner's arguments.  The jury presented four questions to the

trial court as follows:

          THE COURT:     All right, counsel, I received a note from
                         the jury.  Both of you have copies.  It reads
                         - I am trying to read it the best I can.
                         Testimony, one - one, testimony regarding

---

     [4]  Exhibit D-2 was a photograph of the co-defendant, Alonzo
Jenkins.  The defense presented this photograph on its cross-
examination of the victim, Mr. Bashir, on the issue of
identification.

whether the defendant was apprehended while running or walking.

What was his respiratorial [sic] conditioning?

Question number two: What are the first two words, anybody have any idea on that?

MR. BLACK:       At what point, I think.  There is a cross-out.

MR. LIVENGOOD: I think the cross-out is the first one.  It's at what point are they allowed ...

THE COURT:       At what point are they allowed to show photos?

Three, has Alonzo Jenkins been formally ...

MR. BLACK:       Filed or pled.  I can't tell.

THE COURT:       Looks to me like filed - filed.  And four, defendant's full testimony.

(T4 94:17-95:9).

Both the prosecutor and defense counsel agreed that the questions touched on factual issues and did not involve an inquiry on the law.  They also agreed that the police officers' testimony and the petitioner's testimony would be read back in response to jury questions numbers one and four.  Finally, both counsel concurred that the trial court should instruct the jury that their collective memories of the trial testimony and evidence controls, and that they can not be told anything that is not part of the evidence.  (T4 95:10-96:11).  The trial court then responded to the jury as follows:

23

> All right, as to one and four, the court reporter will be
> reading back to you the testimony of the police officers and
> of the defendant.
>
> As to questions number two and number three, my answer is as
> follows: You are only entitled to consider that which has
> been testified to during the course of the trial.  And it is
> your collective recollection as to what was testified to
> that is going to have to govern your memory as to whatever
> was said in regards to those issues.

(T4 97:6-15).

   Thus, there is no merit to petitioner's claims.  The judge

did not summarize evidence, nor did he exclude evidence or

testimony from the jury that was requested.  Moreover, questions

relating to jury instructions are normally matters of state law

and are not cognizable in federal habeas review.  See Engle v.

Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145

(1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.),

cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp.

408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury

instruction is "so prejudicial as to amount to a violation of due

process and fundamental fairness will a habeas corpus claim lie."

Id.

   Where a federal habeas petitioner challenges jury

instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous

24

> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law." Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522

U.S. 1109 (1998).

       As stated above, the record does not show any error, much

less any error of constitutional dimension, by the trial court in

its response to the jury's questions.  Therefore, petitioner's

claims of trial court error with respect to jury instructions and

questions will be dismissed as being wholly without merit.[5]

                V.   CERTIFICATE OF APPEALABILITY

       This Court next must determine whether a certificate of

appealability should issue.  See Third Circuit Local Appellate

_____

       [5]  Van Valen also suggests that his trial counsel was
ineffective for not objecting to the trial court's responses to
the jury questions.  This Court finds that defense counsel's
failure to object at trial to raise a meritless argument does not
per se constitute ineffective assistance of counsel.  See
Kimmelman, 477 U.S. at 383-84; Bolender, 16 F.3d at 1573 (failure
to raise non-meritorious issues does not constitute ineffective
assistance of counsel).

                              25

Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


                                         /s/ Jose L. Linares
                                        United States District Judge

DATED: January 19, 2006